The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good afternoon, ladies and gentlemen. Welcome to the Ninth Circuit. We're very pleased to be with you. I'm grateful to be here today with my colleague from San Francisco, Judge Fletcher. And we're joined on camera by our colleague from San Diego, Judge McKeown. And we welcome those of you who are here to observe the proceedings in an unusual Las Vegas city. We only have one matter on the docket, and that is United States v. Wright, No. 19-10302 and 21-10036. We have allocated 10 minutes per side, and our clerk, Kathy Dodds, will be monitoring that as she's explained to you. So we'll begin with Ms. Dowds. Good afternoon. May it please the Court, Angela Dowds for the defendant and appellant, Brian Wright. I would like to reserve two minutes for rebuttal. Well, here we are again with an agenda of old business and new business related to motions that should have been granted in my client's favor. There are arguments in common to both the Yellow Daisy and West Arby Avenue seizures, and I want to start with this Court's order to discuss the Palmer case in relation to that. First, like Palmer, the government did not overcome the presumption that Mr. Wright should have had his property returned. The items were no longer or not needed as evidence, and they were presumed to be returned to him. So, Ms. Dowds, let me start with the West Arby because I think this is the weakest part of your case. This is going to be very difficult, I think, for you to say that just because he was occupying the West Arby house that this is his property. I think maybe you get past the presumption. But then the government's come through with a number of very competent witnesses who have identified the unique banding of this cash and have said this came from the Silverton, and the government has never brought any charges against Mr. Wright, so he's not accused of having taken it from the Silverton. But it doesn't mean that it's not the Silverton's money as opposed to Mr. Wright's. So why hasn't the government overcome the presumption with respect to the $40,000? Yes, Your Honor. So, in brief, there is no criminal case tying in the proceeds. Why is that important? That would be useful to the government if there were. But just because your client wasn't charged with a theft, the robbery, the armed robbery, doesn't mean that he didn't somehow come into it, whether he found it on the side of the road or whether it was in trade for something else. This doesn't appear to be his money. Well, Your Honor, I will give sort of an ultimate conclusion with that. I don't mean to hide the conclusion at this point. And regardless of how we all may feel about Mr. Wright, what is the rule for cases like this? And there is no case attachment to these proceeds. For a while, we were waiting to see what happened with the Cannon case. In the absence of that, you're essentially taking unindicted allegations and moving them over to the civil arena under a lower standard, on a preponderance of the evidence standard. All we're doing here is so nobody's accusing Mr. Wright of having taken this money. All we're trying to do is to establish whether he's got lawful title. That is sort of a legal title to this money. Your Honor, under that, I will talk about the presumption. Perhaps Your Honor is talking about contraband or unlawful possession. I don't think it's contraband. It's not unlawful to possess money, even if it's been banded by the Silverton. True. And certainly possession of large amounts of cash by itself is not unlawful. Do we get to look at the essential improbability that this would be his money? I mean, what he says, and I read the PSR, I mean, I looked at the case. This man has very little means of visible support. He claims he's gotten the money through gifts from friends and from gambling. That he should have $40,000 neatly tied up in four bundles with bands around it, $10,000 is improbable in the extreme. So why is that not enough to overcome any presumption? Your Honor, it doesn't look good. I will admit that. It's not your fault it doesn't look good. I mean, you got the case you got. But my answer to that is that the law requires more than that. So I guess I can show it through cases where the government successfully defeated a Rule 41 motion. There was direct evidence. There was the defendant's own guilty plea. There was eyewitness testimony identifying the particular person as one of the bank robbers. And there was a lack of credible explanation in addition to that. So direct evidence with the case was sort of this underlying baseline of a criminal case associated with it. But this is not on the criminal case. The question is whether he had, in effect, lawful possession of this money. And I don't see anything in the record that points to that other than it's found where he lives. Is there anything else? I mean, he has improbable explanations. He doesn't have any source. He can't identify a basis for it. On one of these charges, he kind of throws in some argument about the car wreck. But that's kind of an incomprehensible argument. So can you point us to any evidence that would suggest there was lawful possession? Your Honor, I can speak to a presumption and kind of talk about what it looks like in a criminal case versus not. So possession of cash at the time of seizure, according to the case law, is evidence of a person's entitlement to it. There is a presumption. But not usually $10,000 in abandoned stacks. Your Honor, I will admit that it's a bad fact. It's a really bad fact. And since the government is not here claiming that it owns the money, that it's now forfeited, because then it would have some obligation to tie this more directly to the robbery and to Mr. Wright, the government is sort of holding this as maybe like an insurance company or a bank would be, like an interpleader that says, OK, this isn't our cash. And Mr. Wright, it might be yours or it might be the Silverton's. And the Silverton's come in with a number of witnesses, says, yes, that's ours. We're obligated by law to keep track of anybody who picks up cash like this. And there is no record of Mr. Brian Wright ever picking up anything close to this. Your Honor, I agree that it's close, but not quite. And under the Palmer case, we're talking, like Your Honor mentioned, we're talking about an improper, informal judicial, sorry, non-judicial forfeiture. Well, there's no, no, nobody's, the government's not asking to forfeit it. That would establish the government's title to it. And the government has explained, I think the government's going to tell us, that it has no interest in this money. Well, and for that matter, no third party has asserted an interest in it as well. So, for example, the insurance company that was mentioned at the end of the evidentiary hearing of the government turning it over to the insurance company, but there was no claim, no witness, nothing that the insurance company specifically claimed. But that begs the question of whether it belongs to Mr. Wright. So, there may or may not ever be any kind of interpleader or third party claim. But the procedure that is invoked here is that I want this money back because it belongs to me. And I think the difficulty we're having is, in light of the evidence that was produced by the government, why hasn't the government overcome that presumption? Because all he has, that is your client, is just that, well, I was there and it was found, and therefore it's mine. But maybe there's something more we should look to. I agree. Mr. Wright did testify that it was his. I take that as true. And certainly the government, in a criminal case, is more than happy to tie a criminal or defendant in with anything they may be found with. And then here we are in a Rule 41 motion where the government's doing the opposite. Ms. Dunn, what would we do? Let me give you a hypothetical. Let's suppose that Mr. Wright was renting the West Arby house and that he files a 41G motion, and so does the landlord. The landlord says, that's my cash. I put it in that mattress. The mattress was part of a furnished house. And if you've got two people under that and Mr. Wright comes forward and says, well, it's mine. It was given to me. Yes, I have lots of friends who give me things with bands around them. And it was a gift, and I'm therefore in lawful possession. A district court would have to make a judgment, wouldn't they? And they could judge credibility. They could judge the plausibility of that and might make a decision that says, it's clear it's not the government's, and it is possibly one of these two people. But it's also possible that the judge would come back and say, neither of you has offered a plausible explanation, even though you were in sort of bare physical possession of the property. Your Honor, I agree with your assessment. And I'm at the two-minute mark. I'd like you to address the $23,000. Okay. The Yellow Daisy question. So Yellow Daisy, $23,000, the first seizure. We're here again on that. Mr. Wright had already pleaded guilty and been sentenced. He had no forfeiture, no restitution, a $100 special assessment. So that case was over, and there was no other investigation or any reason for the government to maintain those proceeds. Yeah. Now, if he hadn't steadfastly said, that's not my money at the beginning, he'd be in a better position because that money is not wrapped in bands and not bundled in $10,000 amounts and so on. But my problem is that for quite a long time, when the case criminal case looked bad for him, he was insisting that, huh, I don't know anything about it. It's not mine. Yeah, he did have two different answers, Your Honor, just as the government may have. It's both sides of a coin with that, I agree, Your Honor. Yeah, yeah, yeah. But he not only claimed that the money wasn't his, he said that the property wasn't his. He didn't live there. Right, yes. So if he doesn't live there and the money is not his, how does he get to come in and file a 41-G? Well, you can still, I suppose, live at a property and claim the items within the property. But he said he didn't live at the property. He was pretty clear about that. I read that transcript. He was very clear that he did not live there. He had nothing to do with there, and he didn't know how his clothes got there, but they were there. And in any event, the money wasn't his, and nobody was more surprised than Mr. Wright was when the officer told him how much was there. I suppose I'll answer that question under a lower preponderance of the evidence standard, and the judge would weigh it under those circumstances. Can the district court then make a judgment that you can't have it both ways and you're stopped from coming in and telling the police all of these things repeatedly and then coming into court after the prosecution fails and say, oh, by the way, that was mine. I was just lying to the police. Your Honor, I still stick by the idea under presumption that it be returned, that the case is over, that it has to go to the person claiming it. Well, what is the support for that kind of flipping of the presumption? Do you have any case we should look at on that point? Your Honor, I will stick by Palmer. It's probably my favorite case for that reason. Let me just ask you one last question, and that is, is there any way in which your client was prejudiced by the fact that the government didn't proceed with a forfeiture proceeding as opposed to him coming and filing his Rule 41 motion? Well, there is a case that speaks to the idea that the length of time can able prejudice. I guess facetiously you could say, well, he is in prison. What does he need all this money for? But still, he's entitled to it. And really, it's, again, not about Mr. Wright, maybe individually, but what do we do in cases like this? And it's unfair to have this set of circumstances exist. Now, I realize we're taking you over time or threatening to do so, but don't worry. My guess is that Judge Baidu will be lenient with respect to rebuttal. Let me ask you this. How does Palmer help you? Palmer, okay. Thank you, Your Honor. So Palmer talked about the idea that it was an improper, informal, nonjudicial forfeiture, and there was no claim of ownership by a judicial forfeiture or otherwise. So there was no claim by any third party. And in Palmer, there was actually a jury trial, and even then the proceeds went back to the person claiming them. What is your understanding as to what's going to happen? If we were to affirm the district court's judgment on the denial of the 41G, what is your understanding as to what will happen to the $23,000? And if you don't have an answer, I'm going to ask the government this question. Right. It's almost because no one else has claimed it. Abandoned property. Yes, Your Honor. I can't think of another answer. Which is a very plausible answer. That is that there was somehow $23,000 left in the house, perhaps accumulated by previous tenants who perhaps didn't acquire it lawfully. But it might not have been Mr. Wright, in which case the 41G would be denied because it wouldn't be Mr. Wright's, and it might belong to somebody else, but we don't have those folks before us. Yes, Your Honor. Judge McEwen, do you have any further questions? No, I don't. You still have your two minutes. Thank you. Let us hear from Mr. Reed. May it please the Court, Bill Reed for the United States. This appeal involves two search warrant seizures, the first in 2014 and the second one in 2017. Because the 2017 seizure of the $40,000 in gold bands appears to be the clearer of the two cases, I'd like to start with the 2014 seizure of the $23,000. After remand by this court, the district court correctly found that the government met its burden by a preponderance of the evidence by showing that the $23,000 that was seized from Mr. Wright's attic was contraband that he did not lawfully possess for several reasons. First, You say Mr. Wright's attic. Are you conceding that it was his attic? In the residence in which he occupied, I'm not conceding it was his attic. I will speak to that in just one moment, Your Honor. For several reasons, though, the district court correctly reached that conclusion. First, the court found that Mr. Wright had initially denied any connection to the money and to the residence, and then when his criminal case had concluded, he conveniently switched positions and claimed ownership of the money. People who haven't stolen money don't claim that they're not connected to it. Second, Mr. Wright told the court wildly implausible and nonsensical stories about how he acquired the money through gambling and at least one loan, which the district court specifically found was discredited and found it was not a credible explanation as it was entitled to do. Mr. Wright didn't have any burden to, it was the government's burden to show that he did not lawfully possess this money. He didn't have a burden, but he chose to testify and place his credibility at issue, and the district court had the prerogative of assessing that credibility and found that that was not a credible explanation and could take that into account in weighing the evidence to make an assessment of whether or not he was a proper owner of this money. Mr. Wright was not employed at the time, the district court took note of that, and Mr. Wright, well, the district court correctly found that Mr. Wright had been arrested in connection with robberies of jewelry stores and that the timing of the seizure in this case, the $23,000, and in relation to those robberies and where the cash was found in the attic of this residence strongly indicated that Mr. Wright, or that the money was proceeds from robberies. Here, the district court... Well, what happens to that money? Let's say you're right, or correct, as you say, and that Mr. Wright didn't establish his Rule 41 claim. What then happens to that money? Your Honor, I think I can't answer that question, what's going to happen to it, except in the respect that Mr. Wright is not entitled to it. The district court was asked to, so to speak, solve the equation in this case. I understand that, but you're representing the government, and the government holds the money, correct? Yes, Your Honor. So, I mean, can you use it for the annual U.S. Attorney's Party? I mean, what do you do with that money? Your Honor, I think Judge Bobbie, at this point, made the most reasonable explanation for what may happen to this money, unless there is a claimant that comes forward before the court that it will be considered abandoned property and disposed of in whatever fashion the offices and the courts make it. Do you have, do you know what the rules are regarding abandoned property? And is this your abandoned property, or does this belong to Metro in Las Vegas? Does it belong to somebody, some other law enforcement agency, other than the federal government? Your Honor, I believe that... Who conducted the search? The federal agents, or the state agents? I believe that there was a federal search warrant. I believe it was a federal search warrant, but I am not positive about that, Your Honor. And I don't know for certain if the money is with Las Vegas Metropolitan Police Department or with the U.S. Marshals or whom. I don't know where, I don't know who has... Do you know what the federal rules are regarding abandoned property? I do not, Your Honor. I just know that... Or is cheap to the government? Well, let me ask you, why didn't the government just file a forfeiture action? Your Honor, the only, my explanation for that is because there was not a criminal, criminal forfeiture associated, there wasn't a criminal prosecution with this case that allowed it. There was a, it began with a Hobbs Act robbery, 924C prosecution, but that fell apart, so to speak, and it resulted in a felon in possession of a firearm conviction. I don't believe that would have been a vehicle that allowed for a criminal forfeiture. Aren't there a series of statutes that the government can go under for forfeiture? Did you consider all of those options? Your Honor, I don't know what the, I don't know what was considered at the time of the prosecution. I just know that the, in this 41G, that the response was made that Mr. Wright was not entitled to it. I don't know, I don't know what will become of this money. Ultimately, I'd have to submit further briefing on it if the court requires, but he's not entitled to it. But at this point, does the government consider the $23,000 to be forfeited? Forfeited is a term of art. It's certainly, I don't know that it could be forfeited as a legal term or as a legal matter. It's just, it's sort of in limbo is all I can tell the court. It does seem to be in limbo, and in limbo might be the right answer on the government's part. So the Tenth Circuit in the Clymer case has suggested that a, that the 41G proceeding may be a substitute for the forfeiture proceeding. Is that the government's position in this case, that the proceedings in district court here are an adequate substitute for the forfeiture proceedings? Well, I'm not familiar with that case, but if I certainly, I could brief it further if the court requires and would like. But if that is, I certainly would agree that, with Your Honor's suggestion, that if Mr. Wright's not entitled to it legally, and this court would consider allowing the Clymer case to be that vehicle for forfeiture. I think Clymer was cited in your opponent's brief. In my opponent's brief? I think it was, yes. Well, I wouldn't have any, I don't have any disagreement with it if it's a forfeiture vehicle. And you think that would be adequate then for the government to substitute a 41G proceeding for a forfeiture proceeding? I mean, there's certain kinds of notice requirements and other kinds of things that are required, for example, under a 981 proceeding that you're not, that you didn't conduct here. So you think that this can be an adequate substitute and the government is now, that the property is now forfeited to the government, which would allow you to use it for, as Judge McEwen says, the U.S. Attorney's Christmas party. Well, if there hadn't been proper notice, Your Honor, I retract that. There certainly has to be the due process then if there hadn't been proper notice. The point is that if it were a forfeiture conducted according to due process, as you point out, he would also be entitled to a jury trial, which, of course, he doesn't get on the Rule 41 motion. So it does seem there are actual procedural and substantive differences between a forfeiture and Rule 41. Do you agree with that? Yes, Your Honor, I do. I think that we have not weighed in on this question. The Tenth Circuit has weighed in on it. And so we're concerned as to how far that principle carries and whether it should bleed over from our good friends in Denver to us in the Ninth Circuit. And so we're trying to figure out whether the government has a position on that. I'm not going to take that position here. I've just been working to preserve our position that Mr. Wright has no legal claim to this $23,000 as well as the $40,000. So your answer right now is you don't know what's going to happen to the $23,000? I don't, Your Honor, to be totally candid. I do not know. And apparently there's no one who's come in to claim the $23,000. No, Your Honor. There has been someone who's come in to claim the $40,000. A witness testified from the casino, and as Your Honor has read the transcript and as the district court made a finding of fact that that money belonged, it matched the gold bands from the South Coast Casino. Now as I understand it, those bands are not unique to the Silverton Casino. Is that right? They don't say Silverton Casino. I looked at the exhibit, Your Honor, but they do not make that. They say $10,000, I believe. They don't have the casino's trademark. Well, I think there's evidence in the hearing that as it were, there are standard bands to put around $10,000. I don't know how you get standard because I don't know if that happens much, but if you're banding $10,000, then maybe that's what anybody would use, not just the Silverton. That's plausible, Your Honor. I'm sorry. They did testify that they reversed the bills in a particular way and that these stacks were reversed consistent with the way that the Silverton stacks the $100 bills. I don't recall that aspect, but I don't disagree with Your Honor on that factual. If I had to guess, more than just guess, I mean there's fairly strong evidence that this is Silverton's money. They were robbed. They were robbed of stacks of $10,000 bills that were banded. These are $10,000 bands. Silverton's got a pretty good case, and if the government decides it wants to give it to the Silverton, that doesn't strike me as a bad idea. And 17 days before the robbery, after the robbery took place, it was seized in connection with Mr. Kennedy. So do you know what the government intends to do with the $40,000? I don't know. Your Honor, I don't know exactly what's going to happen to the $40,000. I think in this case there may be an insurer who seeks subjugation on that. It may end up in the hands of the insurer who paid off a claim. That's a little more definitive with the $40,000, yes, Your Honor. And can the government simply make a decision that it's going to turn this over to an insurance company? Do we have to have a formal judicial proceeding of some kind? Sort of a quiet title action or something? I think that in that case, if the court finds Mr. Wright doesn't have any title, ownership, possessory rights to it, that the government can dispose of that money in accordance with how it sees fit in that case, as long as there's not any other adverse claimant. There doesn't need to be, I guess your answer then is there doesn't need to be any formal judicial determination other than it doesn't belong to Mr. Wright. I would cautiously say yes, Your Honor. A couple of these questions aren't immediately in front of us, but we're trying to figure out how does this fit into the rest of the world so that we can issue you, give a decision here that doesn't, as it were, conflict with or mess up the rest of the world. Do you understand where these questions are coming from? It's not because they're strictly necessary to the immediate question. I understand totally, yes, Your Honor. I wish I had more, I wish I could answer more fully what would happen to the money other than with respect to Mr. Wright's interest in it. Do you know by chance, unlike the $23,000, whether the federal government or some state entity has possession of the $40,000? I believe that the federal government in this, I'm a little more certain, Your Honor, that the federal government may have possession or custody of the $40,000 because I believe there is an FBI search warrant associated with that seizure in that case. I'm fairly confident on that, Your Honor. The FBI seized it with a search warrant. I appreciate that. Yes, Your Honor. Anything further, Mr. Reed? Not unless the court has any additional questions, I respectfully submit it to the court. Okay. Thank you, Mr. Reed. Ms. Dowd? Your Honor, just a couple of brief points. I just wanted to give a couple of case examples where there was a positive identification or proving that the claimant held the money unlawfully. Number one, in the Mills case, 1993 Ninth Circuit case, there was a guilty plea plus a restitution order. So you had an underlying criminal case related to it. Another case fits in out of the circuit in 1996. There was a state forfeiture and a state tax levy. So a third-party claim of right to the funds. And I would be remiss if I didn't mention an argument that Mr. Wright wants to raise, just briefly, Your Honor, as to his personal possessions being taken from him at the West Arby Avenue residence. The relief in that circumstance is likely money damages in the absence of those items or the actions to cause the absence of those items. And the reason, one of the reasons for the motion was really to try to figure out where the items were, the status of those items. And he heard that through the hearing. And it's an uphill climb procedurally under a Rule 41 motion. Can a district court even award damages under 41G? Likely not, Your Honor, because of sovereign immunity applying. Why don't you bring an action to the FTCA, the Federal Tort Claims Act? I would likely encourage Mr. Wright to pursue that. I don't know if I can on an appointed matter, but I would encourage him, if he would like to, to do that. Isn't that foreclosed by Ordonez? Isn't Ordonez in our circuit already says you don't get money damages in a Rule 41 proceeding? Correct, Your Honor, because of sovereign immunity under that case, yes, Your Honor. And I don't think the rule even contemplates it, right? Right, Your Honor, correct. But I just wanted to mention it unless there's any other questions. Judge McKeown, any further questions? No, thank you. Thank you, Ms. Dowse. That concludes the court for the argument. United States v. Wright is submitted with that. The court has completed the business for the day, and we stand adjourned. Thank you. All rise.
judges: McKEOWN, FLETCHER, BYBEE